# IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| CAROLE M. FELTON | : |
| DEBTOR(S) | : BANKRUPTCY NO. 15-10451 |

# OPINION

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

Apex Realty LLC has objected to the Debtor's Claim of Exemptions. The Debtor filed a Response to the Objection. A hearing on the matter was held on June 30, 2015. Following the hearing, the parties agreed to submit the matter on a stipulated record and the Court allowed the parties time to brief the issues. Upon receipt of the briefs, the Court took the matter under advisement. For the reasons which follow, the Objection will be dismissed.[1]

*Schedules and Exemption*

On Schedule A the Debtor has listed the ownership of real property at 110 Barley Mill Road in Wallingford, Pennsylvania. The property is her residence (the Residence). She owns it jointly with her husband. It is valued at $327,000. Suntrust holds a first mortgage on it and is owed $200,000.[2]

---

[1] Because this matter concerns administration of, and claims against, the estate and liquidation of an asset, it is within this Court's "core" jurisdiction. *See* 28 U.S.C. § 157(b)(2)(A), (B), and (O)

[2] Schedule D lists Seterus as the secured creditor, but Seterus is a mortgage loan servicer, not a lender. The proof of claim (filed in the husband's case) reflects that Suntrust holds the note and mortgage.

On Schedule C, the Debtor has claimed the Residence as exempt. The basis of the exemption is that she owns the property with her husband as tenants by the entireties.

*Estate Property
and Exemptions*

Property held as a tenant by the entirety comes within the Bankruptcy Code's broad definition of property of the estate. *See Napotnik v. Equibank & Parkvale Savings Ass'n*, 679 F.2d 316, 318 (3d Cir.1982). Notwithstanding, the Code provides for exemption of entireties property:

> (1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) [the federal exemptions] or, in the alternative, paragraph (3) of this subsection.
> …
> (3) Property listed in this paragraph is—
> …
> (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law

11 U.S.C. § 522(b)(3)(B)(emphasis added); *In re Holler*, 2012 WL 3526466, at *2 (E.D.Pa. Aug. 4, 2012)

*Apex's Objection*

As a party in interest, Apex may object to a claim of exemption. B.R. 4003(b)(1). Apex asserts four reasons why the claim of exemption as to the Residence should be disallowed, as follows:

1. To permit such an exemption would enable the Debtor to perpetrate a legal fraud upon the Creditor and upon the Court

2. The Husband's failure to list the Investment Note in his bankruptcy schedules means that that debt was not discharged.

2

3. The Husband's failure to list the Investment Note in his bankruptcy schedules "served to conceal all joint debt from the trustee, and caused the trustee to refrain from acting to preserve the entireties property."

4. At the time that the Debtor filed her bankruptcy petition the entireties ownership of the Residence had been terminated.

Objection, 4. The Debtor disputes the claim that her husband failed to list the Apex debt in his earlier individual bankruptcy; that Apex was ever a joint creditor entitled to proceed against entireties property in the first place; and that the marital entity was ever terminated. As the objecting party, Apex bears the burden of proof. B.R. 4003(c).

*Stipulated Record*

In lieu of trial the parties submitted a Stipulation of Facts. From the stipulation the following is established: the parties' relationship began in June 2005. Stip. ¶¶ 1, 13. At that time, Meridian Bank made a loan (the Investment Note) to the Debtor and her husband and granted a line of credit (LoC) to her husband's business. *Id.* ¶¶ 1, 13. The Investment Note was in the amount of $380,000 and the LoC was for $100,000. *Id.* As security, the Debtor and her husband gave the Bank a mortgage on an investment property in Media, Pennsylvania (the Media Property). *Id.* ¶¶ 4, 16. They also guaranteed the line of credit. *Id.* ¶ 22

In April 2011 the Debtor filed for divorce. *Id.* ¶ 30. In August 2012 the Debtor and her husband defaulted on both obligations to Meridian. *Id.* Ex. 1 Complaint, ¶ 11. In December 2012 the Debtor's husband filed an individual Chapter 7 bankruptcy case. *Id.* ¶ 33. In February 2013 Meridian obtained relief from the bankruptcy stay in order to file a foreclosure complaint against the husband. *Id.* ¶ 43. In May 2013 the husband received a bankruptcy discharge. *Id.* ¶ 44. That same month Meridian confessed

3

judgment against the Debtor in state court. *Id.* ¶ 24. In August 2013 the Bank filed a foreclosure action based on both loans. *Id.* ¶ 46. In March 2014 Meridian was granted summary judgment against the Debtor in the amount of $616,000. Id. ¶ 47. In May 2014 Meridian assigned its interests in the Investment Note and the LoC to Apex. *Id.* ¶¶ 48-49. In June 2014 the Media Property was sold at sheriff's sale to a third party. *Id.* ¶ 52. The sale price was $325,000. *Id.* In November 2014 Apex filed a Petition to Fix Fair Market Value of the Media Property. That petition was filed against the Debtor. *Id.* ¶ 53. On January 22, 2015 the Debtor commenced her Chapter 7 bankruptcy case. *Id.* ¶ 54.

*Marital Status*

The Court addresses Apex's fourth argument first, because it challenges the essential premise of the exemption; to wit: that the Debtor is married and is therefore entitled to exempt property owned by her and her spouse. *See Frederick v. Southwick*, 165 Pa. Super. 78, 83 (Pa.Super.1949) (listing among the five "unities," or requirements, for tenancy by the entireties that the two persons be married). To dispute that premise, Apex relies on the Stipulation of Facts which states that on September 9, 2013 a divorce decree was entered. Stip. ¶ 31, Divorce Case docket, Ex. 3. Thereafter, contends Apex, the entireties entity was terminated. *In re Davis*, 356 B.R. 385, 387 (Bankr.W.D.Pa. 2006) (explaining that effect of divorce in Pennsylvania is to sever tenancy by the entirety)  The Debtor's filing of her bankruptcy case after that date, says Apex, means that she may not exempt property as being owned by the entireties. *See Napotnik, supra*, at 319.

This premise, however, is flatly contradicted by the next paragraph in the Stipulation. Paragraph 32 states that four days after the divorce decree was entered, it

4

was vacated. Stip. ¶ 32. There is no evidence before the Court as to why this occurred. The Stipulation, in particular, sheds no light. What evidence there is shows that after the decree was vacated the case continued and remained pending as of the petition date. Stip. Ex. 3. The effect of the order vacating the divorce decree rendered it a nullity. It was, in other words, as if the divorce decree was never entered. *See Legory v. Finch,* 424 F.2d 406, 409-410 (3d Cir. 1970) ("No case is cited and our research has disclosed no case holding that once a divorce decree is vacated it continues to have legal effect as an interruption of the continuity of the marriage for the period preceding its vacation"); *see also Rosen v. Rosen*, 549 A.2d 561, 562 (1998) (vacating of divorce decree had the effect of resuming the divorce proceeding). The Court accordingly holds that that the Debtor was married on the date she filed this bankruptcy and that the Residence continued to be owned by her and her husband by the entireties. Exemption of the residence by the Debtor on that basis is therefore valid.

*Legal Fraud*

Having disposed of this threshold challenge, the Court turns next to the argument that to "permit such an exemption would enable the Debtor to perpetrate a legal fraud upon the Creditor and upon the Court." The term "legal fraud" is synonymous with "constructive fraud," which has been so defined:

> Constructive fraud is defined as an act done or omitted which amounts to positive fraud, or is construed as a fraud by the court because of its detrimental effect upon public interests and public or private confidence, even though the act is not done or omitted with an actual design to perpetrate positive fraud or injury upon other persons. Constructive fraud, sometimes called *legal fraud*, is nevertheless fraud, although it rests upon presumption and rests less upon furtive intent than does moral or actual fraud. *It is presumed from the relation of the parties to a transaction or from the*

5

>     *circumstances under which it takes place* (footnotes omitted).

*In re Butler*, 86 B.R. 829, 832 (Bankr.E.D.Pa. 1988) quoting 37 Am.Jur.2d 23 (1968) (emphasis added). *See In re Bowen,* 151 F.2d 690, 691–92 (3d Cir.1945); *Carr–Consolidated Biscuit Co. v. Moore,* 125 F.Supp. 423, 433 n. 28 (M.D.Pa.1954); and *LaCourse v. Kiesel,* 366 Pa. 385, 390, 77 A.2d 877, 880 (1951).

In using the term legal fraud Apex appears to imply that allowing the Debtor to exempt the Residence under these circumstances works an unfairness upon Apex. The perceived prejudice Apex alludes to is the collateral effect that the husband's prior bankruptcy discharge has on certain creditors in his wife's bankruptcy case. Specifically, the husband's prior discharge converted creditors holding joint claims against husband and wife to individual creditors of the wife alone. In turn, real property formerly attachable by joint creditors can be claimed as exempt by the wife under the above described provisions of the Bankruptcy Code.

This is indeed prejudicial. It might be actionable had Meridian been without an available remedy to protect its interests. But that is not the case. The fact is that Meridian had ample opportunity to protect its interests in the Residence but inexplicably failed to act. Meridian could have preserved its rights against entireties property, such as the Residence, in at least two ways. In *In re Cotterman*, 67 B.R. 788 (Bankr.W.D.Pa. 1986), for example, a joint creditor as to a debtor and her spouse sought relief from the bankruptcy stay to continue a lawsuit against the debtor spouse. The bankruptcy court granted that request. The *Cotterman* Court's cogent analysis is worth quoting at length:

>     This case illustrates a difficult problem that confronts a creditor who holds a joint claim against a husband and wife when only one spouse files bankruptcy. It is clear under

6

> Pennsylvania law outside of bankruptcy that a creditor may proceed to judgment and reach entireties property to satisfy the joint debts of a husband and wife. [citations omitted] The problem arises in bankruptcy when only one spouse files bankruptcy and receives a discharge before the joint creditor is able to reduce his claim to judgment and execute on the couple's entireties property to satisfy his claim. After the Debtor's in personam liability is discharged by the bankruptcy, the creditor is left with an in personam claim against only the non-filing spouse which, if reduced to judgment, will not enable the creditor to reach the couple's entireties property to satisfy his claim. [citations omitted] To preserve and protect its state law right to reach entireties property in satisfaction of its joint claim, the creditor here has moved the Bankruptcy Court for relief prior to the Debtor's discharge.

67 B.R. at 790. The *Cotterman* court went on to note that courts could fashion a remedy one of two ways:

> [] One remedy is to grant the joint creditor relief from the automatic stay and withhold the Debtor's discharge while the joint creditor proceeds to judgment and execution against the entireties property in state (or other appropriate) court. See, e.g., Chippenham Hospital, Inc. v. Bondurant, 716 F.2d 1057 (4th Cir.1983). Thereafter, the Debtor's in personam liability on the joint debt is discharged in her bankruptcy, thereby absolving her of personal liability for any deficiency.
>
> Another remedy is to direct the trustee to sell the entireties property and distribute the proceeds to the couple's joint creditors. See, e.g., Sumy v. Schlossberg, 777 F.2d 921 (4th Cir.1985) (under state law, to the extent that the debtor and non-filing spouse are indebted jointly, property owned as tenants by the entireties may not be exempted under 11 U.S.C. § 522(b)(2)(B) and the trustee may administer such property for benefit of joint creditors under Bankruptcy Code).

Id. at 790-91. As a result, the Court concluded that

> [J]oint creditors are entitled, and should in some manner be allowed, to reach entireties property in the bankruptcy context to satisfy their claims. To hold otherwise would result in legal fraud on joint creditors. As one court explained:

7

> The purpose of the bankruptcy act was to equitably distribute the assets of distressed debtors among their creditors and to discharge them from further liability after this had been done. It was never contemplated that it should be used to perpetrate fraud or to shield assets from creditors. It is elementary that a bankrupt is not entitled to a discharge unless and until he has honestly surrendered his assets for the benefit of creditors; and he certainly is not in position to ask a court of bankruptcy, which is a court of equity, to grant him a discharge under the statute, when the effect of the discharge will be to withdraw from the reach of creditors property properly applicable to the satisfaction of their claims
> ...
> There is ample authority for the proposition that where the property is not reachable through bankruptcy, but can be reached by a creditor under state laws, the court of bankruptcy should delay granting a discharge to the bankrupt to enable the creditor to proceed thereunder in the state courts. (Citations omitted).

67 B.R. at 791 quoting *Chippenham Hospital, Inc. v. Bondurant*, 716 F.2d 1057 (4th Cir.1983) *citing Phillips v. Krakower*, 46 F.2d 764, 765–66 (4th Cir.1931). Such relief was available to Meridian. Had Meridian acted in the husband's bankruptcy, Apex would not face the problem it does now. Meridian could and should have asserted its claim against the Residence in the husband's bankruptcy.[3] It is far too late now. *See Taylor v. Freeland & Krontz*, 503 U.S. 638, 643-44, 112 S.Ct. 1644, 1648 (1992) (holding that Chapter 7 trustee could not contest validity of claimed exemption after 30–day period for objecting had expired and no extension had been obtained)

*The Investment Note
Was Scheduled*

     Apex's second and third arguments are puzzling. Apex claims that the Debtor's husband failed to list the Investment Note owed to Meridian in his schedules. The effect

---

[3] Indeed, the schedules in both bankruptcies show that the mortgage on the Residence was significantly oversecured.

8

of that alleged omission is said to be two-fold. First, it precluded Meridian from proceeding against other attachable property; to wit, the Residence (Argument #2). Second, it prevented the trustee from realizing that the Residence could be sold for the benefit of joint creditors (Argument #3). *See* 11 U.S.C. §363(h), (j) (providing for the sale of entireties held property based on benefit to co-owners).

The crux of this claim, however, is clearly unsupported by the stipulated record. A review of the husband's schedules reveals that the husband listed the Investment Note, the line of credit, and his guarantee. See Stip., Ex. 4, Husband's Bankruptcy Schedules.[4] The loan explicitly appears on Schedule D among secured debts. Under the claim description, it states that the debt was incurred in 2005 and that it is secured by a first mortgage on "Business property located 19 West 2d Street in Media, Pennsylvania." The line of credit and guarantee appear on Schedule F. Thus, and completely contrary to what Apex asserts, Meridian *was* on notice and could have asserted an interest in the entireties property. No explanation is given for its inaction. Its failure to have acted cannot lightly be attributed to fraud or other misconduct on the part of the Debtor or her husband when there is no evidence whatever to support such an allegation. *See Allegheny Drop Forge Co v. Portec Inc.*, 370 F.Supp. 673, 684 (W.D.Pa. 1974) ("[I]t is a general principle of law that allegations of fraud require clear proof.") For purposes of this bankruptcy, Apex's rights vis-à-vis the Debtor and her husband are no better than those held by Meridian when it assigned the loan. *See* 13 P.S. § 3305(a) (providing that holder in due course status is subject to the defense of the discharge of the obligor in insolvency proceedings). In short, the arguments of Apex have no merit.

---

[4] As to all three Meridian Bank is listed as the creditor since the loans had not yet been assigned to Apex. Debtor's husband filed bankruptcy on December 18, 2012 and received a discharge in May 2013. It would not be until May 29, 2014 that Meridian assigned the debt to Apex. Stip., ¶ 48.

*Joint vs Individual*
*Creditor Status*

The above findings obviate the need to rule on whether the lender was a joint or individual creditor at the time the loans were made. There is some evidence to support the Debtor's claim that the Debtor and her husband signed the note "individually" as opposed to jointly as married persons. See Stip. Ex.1 Confession of Judgment, Ex. A Promissory Note, last page. But there is also some evidence to support Apex's claim that this was a joint obligation, inasmuch as the same note states that both husband and wife were primarily liable and that both received the consideration. *Id.; see also A. Hupfel's Sons v. Getty*, 299 F. 939, 941 (3d Cir. 1924) (identifying four elements to determine joint liability as between husband and wife: whether the couple consented to change the attributes of tenancy by the entireties; whether both husband and wife are primarily liable on the obligation; whether each have a mutual interest in the *res* of the loan and liability is without doubt; and whether either spouse received separate consideration for the obligation) Importantly, even were the Court to find for present purposes that the liability of the spouses was joint when the loan was made, what ultimately matters is the result of the husband's bankruptcy. In that proceeding, Meridian's claim against the husband was discharged, thereby changing its creditor status from joint to individual. Thereafter, Meridian, and perforce Apex, stood precluded from proceeding against entireties property.

*Summary*

The arguments advanced by Apex in its Objection fail. The Court rejects Apex's contentions that the Debtor was not married on the date she commenced this bankruptcy case and that the entireties estate as to the residence was terminated. The

10

Court likewise finds no evidence of fraud or misconduct in the circumstances detailed in the parties' stipulated record. Consequently, the exemption of the Residence as entireties property is valid and the Objection will be dismissed.

An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated: September 2, 2015